**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

---

S.O.I., a minor, by and through her parents, MOHIZODABEGIM KARIMOVA and MUKHAMMADOLIMKHON SOLIEV, custodial parents and next friends,

      Plaintiff,

v.

INSTANT BRANDS, LLC, a Delaware Limited Liability Company; INSTANT BRANDS, INC., an Illinois Corporation; CORELLE BRANDS, LLC, a Delaware Limited Liability Company; MIDEA AMERICA CO., a Florida Corporation; and COSTCO WHOLESALE CORPORATION, a Washington Corporation,

      Defendant.

Docket No.: 4:24-cv-258

**COMPLAINT AND DEMAND FOR JURY TRIAL**

---

**COMPLAINT**

Plaintiffs, **S.O.I,** a minor, by and through her parents, **MOHIZODABEGIM KARIMOVA** and **MUKHAMMADOLIMKHON SOLIEV,** custodial parents and next friends, by and through their undersigned counsel, **JOHNSON BECKER, PLLC** and **CLARK VON PLONSKI ANDERSON**, hereby submit the following Complaint and Demand for Jury Trial against Defendants, **INSTANT BRANDS, LLC; INSTANT BRANDS, INC.; CORELLE BRANDS, LLC, MIDEA AMERICA CO.;** and **COSTCO WHOLESALE CORPORATION** (collectively, "Defendants"), and allege the following upon personal knowledge and belief, and investigation of counsel:

**NATURE OF THE CASE**

1

1.     This is a product liability action seeking recovery for substantial personal injuries and damages suffered by Plaintiff S.O.I. after she was seriously injured by an Instant Pot DUO Gourmet Multi-Use Pressure Cooker (hereafter generally referred to as "pressure cooker(s)" or "subject pressure cooker") marketed, imported, distributed, and sold by Defendant Costco Wholesale Corporation ("Costco") and designed, manufactured, marketed, imported, distributed and/or sold by Defendant Midea America Co. ("Midea America") and Defendants Instant Brands, LLC; Instant Brands, Inc.; and Corelle Brands, LLC (collectively, "Instant Brands Defendants").

2.     Defendant Costco markets, imports, distributes, and sells a wide-range of consumer products, including the subject Instant Pot DUO Gourmet Mult-Use Pressure Cooker designed and manufactured by Midea America and Instant Brands Defendants.

3.     Said pressure cookers are advertised as convenient and safe, and are touted for their supposed "safety"[1] features, which claim to prevent the units from being opened while in use and pressurized. Despite these claims of "safety," Defendants collectively designed, manufactured, marketed, imported, distributed, and sold a product that suffers from serious and dangerous defects. Said defects cause significant risk of bodily harm and injury to its consumers.

4.     Specifically, said defects manifest themselves when, despite Defendants' statements, the lid of the pressure cooker is removable with built-up pressure, heat, and steam still inside the unit. When the lid is removed under such circumstances, the pressure trapped within the unit causes the scalding hot contents to be projected from the unit and into the surrounding area, including onto the unsuspecting consumers, their families, and other bystanders. In this case, the lid of the pressure cooker was able to be opened or removed while the pressure cooker retained pressure, causing Plaintiff S.O.I. serious and substantial bodily injuries and damages.

---

[1] *See generally*, Instant Pot DUO Gourmet User Manual.  A copy of the User Manual is attached hereto as "Exhibit A."

2

5.      Defendants knew or should have known of these defects, but have nevertheless put profit ahead of safety by continuing to sell their pressure cookers to consumers, failing to warn said consumers of the serious risks posed by the defects, and failing to recall the dangerously defective pressure cookers regardless of the risk of significant injuries to Plaintiffs and consumers like them.

6.      Defendants ignored and/or concealed their knowledge of these defects in their pressure cookers from Plaintiffs in this case, as well as the public in general, in order to continue generating a profit from the sale of said pressure cookers, demonstrating a callous, reckless, willful, depraved indifference to the health, safety and welfare of Plaintiffs and consumers like them.

7.      As a direct and proximate result of Defendants collective conduct, Plaintiffs in this case incurred significant and painful bodily injuries, medical expenses, physical pain, mental anguish, and diminished enjoyment of life.

### PLAINTIFFS S.O.I, MOHIZODABEGIM KARIMOVA, AND MUKHAMMADOLIMKHON SOLIEV

8.      Plaintiffs are residents and citizens of the City of Plano, County of Collin, State of Texas. At all times relevant, Plaintiff and her mother resided in Plano, Texas. Plaintiff is therefore a resident and citizen of the State of Texas for purposes of diversity pursuant to 28 U.S.C. § 1332.

9.      Plaintiff S.O.I. is seven years old, and resides with both of her parents, who are Plaintiffs to this action.

10.     In or around December of 2021, Plaintiff S.O.I.'s mother purchased the subject pressure cooker from the Costco Wholesale store located at 3800 North Central Expressway, Plano, Texas 75074.

11.     On or about March 25, 2022, Plaintiff S.O.I. suffered serious and substantial burn injuries as the direct and proximate result of the pressure cooker's lid being able to be rotated and opened while the pressure cooker was still under pressure, during the normal, directed us of the pressure

cooker, allowing its scalding hot contents to be forcefully ejected from the pressure cooker and onto Plaintiff S.O.I.  The incident occurred as a result of the failure of the pressure cooker's supposed "safety mechanisms" and "pressure control features"[2] which purport to keep the consumer and their families safe while using the pressure cooker.  In addition, the incident occurred as a result of Defendants' failure to redesign the pressure cooker, despite the existence of economical, safer alternative designs.

## INSTANT BRANDS DEFENDANTS

12.    Defendants Instant Brands, LLC; Instant Brands, Inc.; and Corelle Brands, LLC design, manufacture, market, import, distribute and sell a variety of consumer kitchen products including pressure cookers, air fryers, and blenders, amongst others.

13.    Defendants boast that "cooking with Instant Brands is everyday magic,"[3] and that their products are "all designed to simplify the joys of home cooking, promote healthy lifestyles, and give you more time to enjoy great meals with the people you love."[4]

14.    Instant Brands, LLC is Delaware limited liability company with is principal place of business at 3025 Highland Parkway, Downers Grove, IL 60515. Upon information and belief, at all times relevant, Instant Brands, LLC's sole member was Instant Brands Holdings, Inc. Instant Brands Holdings, Inc. also has its principal place of business at 3025 Highland Parkway, Downers Grove, IL 60515. Therefore, Instant Brands, LLC is deemed to be a resident and citizen of the State of Delaware and the State of Illinois for purposes of diversity jurisdiction under 28 U.S.C. § 1332.

---

[2] *Id*. at 22-27.
[3] *See* https://www.instanthome.com/about-us
[4] *Id.*

15.    Upon information and belief, Instant Brands, Inc. is a Delaware limited liability company with its principal place of business located at 3025 Highland Parkway, Downers Grove, IL 60515. Therefore, Instant Brands, Inc. is deemed to be a resident and citizen of the State of Delaware and the State of Illinois for purposes of diversity jurisdiction under 28 U.S.C. § 1332.

16.    Corelle Brands, LLC is a Delaware limited liability company with is principal place of business at 3025 Highland Parkway, Downers Grove, IL 60515. Upon information and belief, Corelle Brands, LLC's sole member is Instant Brands Holdings, Inc. Instant Brands Holdings, Inc. also has its principal place of business at 3025 Highland Parkway, Downers Grove, IL 60515. Therefore, Corelle Brands, LLC is deemed to be a resident and citizen of the State of Delaware and the State of Illinois for purposes of diversity jurisdiction under 28 U.S.C. § 1332.

17.    On June 12, 2023, the Instant Brands Defendants commenced a Chapter 11 proceeding. *See In re Instant Brands Acquisition Holdings Inc., et al.* (Bankr. S.D. Tex. Case No. 23-90716) (the "Bankruptcy Case"). On February 23, 2024 the Bankruptcy Court issued a *Findings of Fact, Conclusions of Law, and Order (I) Confirming the Joint Chapter 11 Plan of Reorganization of Instant Brands Acquisition Holdings Inc. and Its Debtor Affiliates and (II) Approving the Disclosure Statement on a Final Basis* at Dkt. No. 1146. Exhibit A to the Order, Article VII, section L states the following:

> Nothing herein (including Articles XI.B and XI.G) shall preclude Holders of Product Liability Claims from (1) naming a Reorganized Debtor as a nominal defendant in an action brought in respect of a Product Liability Claim, thereby allowing, and solely to the extent required to enable, the named Reorganized Debtor to tender the applicable Product Liability Claim to the applicable Third-Party Indemnitor under all available and applicable Third-Party Indemnifications (as set forth in Article II.D), if any, as will be adjudicated by the Bankruptcy Court in connection with Confirmation unless otherwise consensually settled or resolved, or (2) otherwise pursuing their Claims against Insurers under all available and applicable Insurance Contracts; *provided*, that none of the Reorganized Debtors shall have any obligation to participate or assist in any action brought in pursuit of any Product Liability Claims or have any liability with respect to any Product Liability Claims. For the avoidance of doubt, all liabilities of the Debtors, the

5

Debtors' Estates, or the Reorganized Debtors for any Product Liability Claims shall be discharged on the Effective Date in accordance with the Plan. To ease the burdens on the Reorganized Debtors, all Holders of Product Liability Claims may use any discovery previously taken in connection with any previous Product Liability Claim against the Debtors, and both the Debtors and the Reorganized Debtors waive any prior protective orders to the extent necessary to effectuate this paragraph (however, any prior confidentiality designations are expressly preserved and shall remain in effect). To the extent that a Product Liability Claim is not satisfied by an Insurer or Third-Party Indemnitor, the Holder will be permitted to assert such Excess Product Liability Claim as a General Unsecured Claim (subject to prior compliance with the Bar Date Order). The Distribution Agent, the Litigation Trustee, or any Holder of a Product Liability Claim may seek estimation of any expected Excess Product Liability Claim, including for purposes of establishing an appropriate reserve in connection with any distributions from the Litigation Trust.

18.     This proceeding was initially commenced in the Bankruptcy Case by the filing of two Proof of Claims on October 9, 2023, against both Instant Brands, Inc. and Instant Brands, LLC. *See* Claim Nos. 0000010664; 0000010609. This action is being initiated now in this District Court solely to ensure satisfaction of the Plaintiff's applicable statute of limitation, but remains subject to the above cited Order in the Bankruptcy Case, and thus this action should be stayed until the conditions in paragraph 31(a) of such Order are satisfied.

## MIDEA AMERICA CORP.

19.     Defendant Midea America Corp. designs, manufactures, markets, imports, distributes and sells a variety of consumer kitchen products including pressure cookers, air fryers, and blenders, amongst others.

20.     Midea America is, and was at the time of Plaintiff S.O.I.'s injuries, a corporation organized and existing under the laws of the State of Florida with its headquarters and principal place of business located in Parsippany, New Jersey.  Midea America does business in all 50 states.  Midea America is therefore deemed to be a resident and citizen of both the State of Florida and the State of New Jersey for purposes of diversity jurisdiction under 28 U.S.C. § 1332.

21.     At all times relevant, Midea America substantially participated in the design, manufacture, marketing, distribution and sale of the subject pressure cooker, which caused Plaintiffs' injuries and damages.

## DEFENDANT COSTCO WHOLESALE CORPORATION

22.     Defendant Costco Wholesale Corporation designs, manufactures, markets, imports, distributes and sells a variety of consumer products, including the subject pressure cooker in this case.

23.     Costco is, and was at the time of Plaintiff S.O.I.'s injury, a corporation organized and existing under the laws of the state of Washington with its headquarters and principal place of business located at 999 Lake Drive, Issaquah, Washington 98027. Costco does business in 47 states.[5] Costco is therefore deemed to be a resident and citizen of the State of Washington for purposes of diversity jurisdiction under 28 U.S.C. § 1332.

24.     At all times relevant, Costco substantially participated in the design, manufacture, marketing, distribution and sale of the subject pressure cooker, which caused Plaintiffs' injuries and damages.

## JURISDICTION AND VENUE

25.     *Personal Jurisdiction over Instant Brands Defendants*: The Instant Brands Defendants transact business in Texas; derive substantial revenue from goods sold, purchased, distributed and/or used in Texas; regularly do or solicit business in Texas; and committed tortious acts and/or omissions that caused injury in Texas. Instant Brands Defendants derive revenue from the sales of consumer products within Texas and have purposefully availed themselves of the privilege of doing business in Texas. They marketed, distributed, and sold the subject pressure cookers in

---

[5] Costco does not have locations in Rhode Island, West Virginia, or Wyoming.

Texas.  Instant Brands Defendants have sufficient "minimum contacts" with Texas such that subjecting them to personal jurisdiction here does not offend traditional notions of fair play and substantial justice. Exercising personal jurisdiction over the Instant Brands Defendants in this Court comports with due process.

26.    *Personal Jurisdiction over Midea America*: Midea America transacts business in Texas; derives substantial revenue from goods sold, purchased, distributed and/or used in Texas; regularly does or solicits business in Texas; and committed tortious acts and/or omissions that caused injury in Texas. Midea America derives revenue from the sales of consumer products within Texas and has purposefully availed itself of the privilege of doing business in Texas. It marketed, distributed, and sold the subject pressure cookers in Texas.  Midea America is registered to do business in Texas, and maintains a registered agent at Corporation Service Company d/b/a CSC-Lawyers Incorporated, 211 East 7t Street Suite, 620 Austin, TX 78701. Midea America has sufficient "minimum contacts" with Texas such that subjecting it to personal jurisdiction here does not offend traditional notions of fair play and substantial justice. Exercising personal jurisdiction over Midea America in this Court comports with due process.

27.    *Personal Jurisdiction over Costco*: Costco transacts business in Texas; derives substantial revenue from goods sold, purchased, distributed and/or used in Texas; regularly does or solicits business in Texas; and committed tortious acts and/or omissions that caused injury in Texas. Costco derives revenue from the sales of consumer products within Texas and has purposefully availed itself of the privilege of doing business in Texas. It marketed, distributed, and sold the subject pressure cookers in Texas.  Costco is registered to do business in Texas, and maintains a registered agent at CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX 75201. Costco has sufficient "minimum contacts" with Texas such that subjecting it to personal jurisdiction here does not offend traditional notions of fair play and substantial justice. Exercising

8

personal jurisdiction over Costco in this Court comports with due process.

28.     This Court has subject matter jurisdiction over this case pursuant to diversity jurisdiction prescribed by 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and there is complete diversity between the parties.

29.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that Plaintiffs are residents and citizens of the State of Texas and all or a substantial part of the events or omissions giving rise to this claim occurred in this district.

30.     Venue is also proper in this Court pursuant to 28 U.S.C. § 1391 because Defendants have sufficient minimum contacts with the State of Texas and intentionally availed themselves of the markets within the State of Texas through the promotion, sale, marketing, and distribution of their products.

## FACTUAL BACKGROUND

31.     Defendants are engaged in the business of designing, manufacturing, warranting, marketing, importing, distributing, and selling the pressure cookers at issue in this litigation.

32.     Defendants aggressively warrants, markets, advertises, and sells its pressure cookers as "[e]asy to use, easy to clean, fast, versatile, and convenient"[6] and repeatedly boasts about its pressure cookers' purported "proven safety features."[7]

33.     To further propagate their message, Instant Brands Defendants have used, and continue to utilize, numerous media outlets including, but not limited to, infomercials, social media websites such as YouTube, and third-party retailers.  For example, the following can be found on the Instant Brands Defendants' YouTube webpage entitled "Getting to Know Your Knew Instant Pot IP-DUO":

---

[6] *See* https://www.instanthome.com/product/instant-pot/duo/6-quart-pressure-cooker-v4
[7] *Id*.

a. "The first thing you need to know about your IP-DUO is that *you don't need to be afraid of it*, as many people are afraid of stovetop pressure cookers."[8]

b. "With 10 safety features built in, you can use your Instant Pot with confidence, *knowing that it is not going to explode*."[9]

c. "In addition, keep in mind that your Instant Pot operates at relatively low pressures of 11 to 12 psi or lower, depending on the pressure setting that you use."[10]

34.    In a similar video entitled "Introducing Instant Pot IP-DUO series electric pressure cooker," spokesperson Laura Pazzaglia, founder of the website "Hip Pressure Cooking"[11] boasts of the pressure cooker's "10 safety features," stating that this "new model detects the position of the lid" and "once the lid is locked, and the contents are under pressure, *there's no way to open the pressure cooker*."[12]

35.    According to the Owner's Manual accompanying each individual unit sold, the pressure cookers purport to be designed with "pressure control features" which are "integral part[s] of product safety,"[13] misleading the consumer into believing that the pressure cookers are reasonably safe for their normal, intended use.  Specifically, the Owner's Manual assures consumers that "[o]nce enough steam has built up inside the inner pot, the float valve pops up and locks the lid of the cooker in place for safe pressure cooking."[14]

---

[8] https://www.youtube.com/watch?v=w1RKj9E8TY0 (video with a runtime of 11:26) at 0:42-0:46
[9] *Id*. at 0:47 – 0:55.
[10] *Id*. at 0:56 – 1:08.  This apparently suggest that even if the lid is opened while the unit is still pressurized, it will not harm you.
[11] *See* https://www.hippressurecooking.com/
[12] https://www.youtube.com/watch?v=bVA2EqPf0s0 (video with a runtime of 8:30)
[13] Instant Pot DUO Gourmet User Manual, pgs. 22-27.
[14] *Id*. at pg. 28.

36.    By reason of the forgoing acts or omissions, Plaintiffs used the pressure cooker with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of cooking.

37.    Plaintiffs used the pressure cooker for its intended purpose of preparing meals, and did so in a manner that was reasonable and foreseeable by the Defendants.

38.    However, the aforementioned pressure cooker was defectively and negligently designed and manufactured in that it failed to properly function as to prevent the lid from being removed while the unit remained pressurized during the ordinary, foreseeable and proper use of cooking food with the product; placing the Plaintiffs and similar consumers in danger while using the pressure cookers.

39.    Defendants' pressure cookers possess defects that make them unreasonably dangerous for their intended use by consumers because the lid can be rotated and opened while the unit remains pressurized.

40.    Further, Defendants' representations about "safety" are not just misleading, they are flatly wrong, and put innocent consumers like, Plaintiffs, directly in harm's way.

41.    Economic, safer alternative designs were available that could have prevented the pressure cooker's lid from being rotated and opened while pressurized.

42.    Defendants knew or should have known that the pressure cookers possessed defects that pose a serious safety risk to Plaintiffs and the public.  Nevertheless, Defendants continue to ignore and/or conceal their knowledge of the pressure cookers' defects from the general public and continue to generate a substantial profit from the sale of their pressure cookers, demonstrating a callous, reckless, willful, and depraved indifference to the health, safety, and welfare of Plaintiffs and others like them.

43.     As a direct and proximate result of Defendants' collective intentional concealment of such defects, their failure to warn consumers of such defects, their negligent misrepresentations, their failure to remove a product with such defects from the stream of commerce, and their negligent design of such products, Plaintiffs used an unreasonably dangerous pressure cooker, which resulted in significant and painful bodily injuries to Plaintiffs

44.     Consequently, the Plaintiffs in this case seek compensatory damages resulting from the use of Defendants' pressure cooker as described above, which has caused the Plaintiffs to suffer from serious bodily injuries, medical expenses, physical pain, mental anguish, diminished enjoyment of life, and other damages.

## CLAIMS FOR RELIEF

### COUNT I
### STRICT LIABILITY

45.     Plaintiffs incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein.

46.     At the time of Plaintiffs' injuries, Defendants' pressure cookers were defective and unreasonably dangerous for use by foreseeable consumers, including Plaintiffs.

47.     Defendants' pressure cookers were in the same or substantially similar condition as when they left the possession of Defendants.

48.     Plaintiffs did not misuse or materially alter the pressure cooker.

49.     The pressure cookers did not perform as safely as an ordinary consumer would have expected them to perform when used in a reasonably foreseeable way.

50.     Further, a reasonable person would conclude that the possibility and serious of harm outweighs the burden or cost of making the pressure cookers safe. Specifically:

12

a.  The pressure cookers designed, manufactured, sold, and supplied by Defendants were defectively designed and placed into the stream of commerce in a defective and unreasonably dangerous condition for consumers;

b.  The seriousness of the potential burn injuries resulting from the product drastically outweighs any benefit that could be derived from its normal, intended use;

c.  Defendants failed to properly market, design, manufacture, distribute, supply, and sell the pressure cookers, despite having extensive knowledge that the aforementioned injuries could and did occur;

d.  Defendants failed to warn and place adequate warnings and instructions on the pressure cookers;

e.  Defendants failed to adequately test the pressure cookers; and

f.  Defendants failed to market an economically feasible alternative design, despite the existence of the aforementioned economical, safer alternatives, that could have prevented the Plaintiffs' injuries and damages.

51.    Defendants' collective actions and omissions were the direct and proximate cause of the Plaintiffs' injuries and damages.

**WHEREFORE**, Plaintiffs demand judgment in their favor and against Defendants for damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT II
## NEGLIGENCE

52.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein.

53.    Defendants have a duty of reasonable care to design, manufacture, market, and sell non-defective pressure cookers that are reasonably safe for their intended uses by consumers, such as Plaintiffs.

54.    Defendants failed to exercise ordinary care in the manufacture, sale, warnings, quality assurance, quality control, distribution, advertising, promotion, sale and marketing of the pressure

cookers in that Defendants knew or should have known that said pressure cookers created a high risk of unreasonable harm to the Plaintiffs and consumers alike.

55.     Defendants were negligent in the design, manufacture, advertising, warning, marketing and sale of their pressure cookers in that, among other things, they:

   a.  Failed to use due care in designing and manufacturing the pressure cookers to avoid the aforementioned risks to individuals;

   b.  Placed an unsafe product into the stream of commerce;

   c.  Aggressively over-promoted and marketed the pressure cookers through television, social media, and other advertising outlets; and

   d.  Were otherwise careless or negligent.

56.     Despite the fact that Defendants knew or should have known that consumers were able to remove the lid while the pressure cookers were still pressurized, Defendants continued to market their pressure cookers to the general public (and continue to do so).

**WHEREFORE**, Plaintiffs demand judgment in her favor and against Defendants for damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

**COUNT III**
**BREACH OF IMPLIED WARRANTY OF FITNESS**
**FOR A PARTICULAR PURPOSE**

57.     Plaintiffs incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein.

58.     Defendants manufactured, supplied, and sold their pressure cookers with an implied warranty that they were fit for the particular purpose of cooking quickly, efficiently and safely.

59.     Members of the consuming public, including consumers such as the Plaintiffs, were the intended third-party beneficiaries of the warranty.

60.    Defendants' pressure cookers were not fit for the particular purpose as a safe means of cooking, due to the unreasonable risks of bodily injury associated with their use.

61.    Plaintiffs reasonably relied on Defendants' representations that their pressure cookers were a quick, effective and safe means of cooking.

62.    Defendants' collective breach of the implied warranty of fitness for a particular purpose was the direct and proximate cause of Plaintiffs' injuries and damages.

**WHEREFORE**, Plaintiffs demand judgment in her favor and against Defendants for damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT IV
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

63.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein.

64.    At the time Defendants marketed, distributed and sold the pressure cookers to Plaintiffs, Defendants warranted that their pressure cookers were merchantable and fit for the ordinary purposes for which they were intended.

65.    Members of the consuming public, including consumers such as the Plaintiffs, were intended third-party beneficiaries of the warranty.

66.    Defendants' pressure cookers were not merchantable and fit for their ordinary purpose, because they had the propensity to lead to the serious personal injuries as described herein in this Complaint.

67.    Plaintiffs used the subject pressure cooker with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of cooking.

15

68.     Defendants' breach of implied warranty of merchantability was the direct and proximate cause of Plaintiffs' injury and damages.

**WHEREFORE**, Plaintiffs demand judgment in her favor and against Defendants for damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment against the Defendants for damages, including exemplary damages if applicable, to which they are entitled by law, as well as all costs of this action, interest and attorneys' fees, to the full extent of the law, whether arising under the common law and/or statutory law, including:

    a.  judgment for Plaintiffs and against Defendants;

    b.  damages to compensate Plaintiffs for their injuries, economic losses and pain and suffering sustained as a result of the use of the Defendants' pressure cookers;

    c.  pre and post judgment interest at the lawful rate;

    d.  a trial by jury on all issues of the case;

    e.  an award of attorneys' fees; and

    f.  for any other relief as this Court may deem equitable and just, or that may be available under the law of another forum to the extent the law of another forum is applied, including but not limited to all reliefs prayed for in this Complaint and in the foregoing Prayer for Relief.

Respectfully submitted,

**CLARK | VON PLONSKI | ANDERSON**

Date: <u>March 22, 2024</u>     */s/ Collen A. Clark, Esq.*
Collen A. Clark, Esq.
State Bar No. 04309100
R. Connor Barbe, Esq.
State Bar No. 241085

16

3500 Maple Avenue, Suite 1250
Dallas, TX 75219
(214) 780-0500
(214) 780-0501 (f)
eservice@cvpalaw.com

*In association with:*


**JOHNSON BECKER, PLLC**

Adam J. Kress, Esq.
*Pro Hac Vice to be filed*
444 Cedar Street, Suite 1800
St. Paul, MN 55101
(612) 436-1800 /612-436-1801 (fax)
akress@johnsonbecker.com

***Attorneys for Plaintiff***

17